**U.S. COURTS**

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

**JUL 0 8 2015**

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

---

**CHRISTOPHER BURDGE**
**Pro Se Plaintiff**

**v.**

**COLLEGE OF WESTERN IDAHO**
**Defendant**
Compensatory Damages - $12701.47 or
93 paid credit hours at CWI
Punitive Damages to be requested on
Motion - $250,000.

**Case No.** 1:15 - CV - 00251 - REB

**Civil Action for Deprivation of Rights**
**Title 42 U.S.C. § 1983 et seq.** for Breach of
Fiduciary Duty of VRAP is a Violation of
Plaintiffs Due Process Rights Under the
Fourteenth Amendment to the United States
Constitution.

**Jury Trial Requested F.R.C.P. Rule 38**

---

## JURISDICTION - VENUE - STATUTE OF LIMITATIONS

### SUBJECT MATTER JURISDICTION

**Title 28 U.S.C § 1343** - Civil rights and elective franchise; (a) The district courts shall have original

jurisdiction of any civil action authorized by law to be commenced by any person: *(3)* To redress the

deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right,

privilege or immunity secured by the Constitution of the United States or by any Act of Congress

providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

**Title 28 U.S.C. § 1331-** Federal question: The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States.

This case is filed under Title 42 U.S.C. § 1983 et seq. *(Federal Law - See Matter of Law I)* for violation

of Plaintiffs rights under *(Federal Law- See Matter of Law II)* of the Veterans Retraining Assistance

Page 1  **Title 42 U.S.C. § 1983 CWI**

**FEE PAID**
R# 15393

Program **(hereafter called VRAP)** by the Gross Negligence of the Defendant in Breach of Fiduciary Duty *(Idaho State Law See Matter of Law III and IV)* to the Plaintiff. Title 42 U.S.C. § 1983 et seq. is actionable under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. This court has Subject Matter Jurisdiction.

## PERSONAL JURISDICTION

.**Defendant**: College of Western Idaho **(hereafter called CWI or Defendant)** is a College State Trust formed under the laws of Idaho and is a *"Governmental Entity"* as defined in 6-902(3) of the Idaho Tort Claims Act and a *"political subdivision"* of the State that stands alone as defined by the Department of Administration Risk Management Program for the State of Idaho *(See Matter of Law VIII)*. CWI has offices and classrooms in Ada County, Idaho therefore this Court has Personal Jurisdiction over CWI.

## VENUE

Defendant has Administrative Offices located within Ada County, Idaho (*See* Personal Jurisdiction). Pursuant to Title 28 U.S.C. § 1391 this Court has Venue.

*Title 28 U.S.C. § 1391- Venue generally: (a) Applicability of Section. - Except as otherwise provided by law - (1) this section shall govern the venue of all civil actions brought in district courts of the United States; and (2) the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature. (b) Venue in General. - A civil action may be brought in (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.*

## STATUTE OF LIMITATIONS

The US Supreme Court in (*Wilson v. Garcia,* 471 U.S. 261 (1985)), held that "*the forum state's personal injury statute of limitations governs.*" If the forum state has more than one possibly applicable personal injury statute of limitations, then the state's residual or general statute of limitations governs. (*Owens v. Okure,* 488 U.S. 235 (1989)). The statute of limitations in Idaho is 2 years. The case began for time calculation on September 17, 2013 when the Plaintiff submitted his *"Tort Claims Notice"* pursuant to 6-902(7) of the Idaho Tort Claims Act Title 6 Chapter 9 of Idaho Statues to Cheryl Wright the

Vice President Finance Administration at CWI via certified mail return receipt (stamped returned with signature card on the 17th). Also as requested by Plaintiff, Cheryl returned to Plaintiff via regular mail a time stamped copy of the *"Tort Claims Notice"* with the date of the 17th stamped on it **(Exhibit X)**. Plaintiffs heavy case load prevented him from filling this case under Title 42 U.S.C. § 1983 at an earlier time and is now filing well within the statute of limitations allowed by law.

## PARTIES

**Plaintiff** - Christopher Burdge is a resident of Ada County, Idaho and current student at Boise State University. Plaintiff commences this action for the loss of VRAP Veterans Administration funding do to the Gross Negligence of employees of the College of Western Idaho **(hereafter called CWI or Defendant)** in breach of Fiduciary Duty. Plaintiff contact at: PO Box 6725, Boise ID 83707.

**Defendant** - College of Western Idaho **(hereafter called CWI or Defendant)** is a College State Trust formed under the laws of Idaho and is a *"Governmental Entity"* as defined in 6-902(3) of the Idaho Tort Claims Act and a *"political subdivision"* of the State that stands alone as defined by the Department of Administration Risk Management Program for the State of Idaho *(See Matter of Law VIII)*. CWI has offices and classrooms in Ada County and Canyon County, Idaho. CWI's main administrative office is at 6056 Birch Lane, Nampa ID 83687.

## CAUSE OF ACTION

**COMES NOW the Plaintiff for Cause of Action states the following Allegations:**

Due to the *"Gross Negligence"* (as defined by 6-904C, of the Idaho Tort Claims Act), the *"Employees"* (as defined by 6-902 (4) of the Act) the Defendant a *"Governmental Entity"* (as defined in 6-902(3) of the Act) and a *"political subdivision"* of the State that stands alone as defined by the Department of Administration Risk Management Program for the State of Idaho, were the direct cause of the Plaintiffs loss of VRAP benefits that were already approved by the Veterans Administration **(hereafter called the VA)**. *"Tort Claims Notice"* pursuant to 6-902(7) of the Idaho Tort Claims Act Title 6 Chapter 9 of

Idaho Statues was first served on the Secretary of State of Idaho on August 26, 2013 **(Exhibit Y)**, within the one hundred eighty (180) days from the date the claim arose as required by 6-905 of the Act. The Idaho Secretary of State redirected the document to the State of Idaho's Department of Administration Risk Management Program for evaluation *(See also Exhibit Y for time stamp to Risk Management)*. Letter dated September 5, 2013 **(Exhibit Z)** from Glen Goff, Claims Adjudicator for Risk Management Program stated, *"the state of Idaho is not an involved governmental agency in this matter. Consequently we are returning your claim for proper filing with the College of Western Idaho (CWI).....all claims against a **political subdivision** should be presented to and filed with the clerk or secretary of the **political subdivision**."* Defendant was served with the *"Tort Claims Notice"* document on September 17, 2013 by Certified Mail Return Receipt with also the stamped time date copy of the document **(Exhibit X)** as evidence within the 180 day period. No response from the Defendant was receive within the 90 limit pursuant to 6-909 of the Act. Pursuant to 6-903(a) of the Act - Liability of governmental entities states: *"every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties, whether arising out of a governmental or proprietary function."* Plaintiff after consideration waived his right to file this action under the Idaho Tort Claims Act and has instead decided the more appropriate venue where justice would be rendered is in Federal Court under Title 42 U.S.C. § 1983.

**This case is filed under Title 42 U.S.C. § 1983 et seq. *(Federal Law - See Matter of Law I)* for violation of Plaintiffs rights under *(Federal Law- See Matter of Law II)* of the Veterans Retraining Assistance Program (VRAP) by the Gross Negligence of the Defendant in Breach of Fiduciary Duty. The Idaho Supreme Court defined Breach of Fiduciary Duty as a Tort *(Idaho State Law - See Matter of Law III)*. The US Supreme Court in *(Carey v. Piphus*, 435 U.S. 247 (1978))* stated, *"The legislative history of § 1983, elsewhere detailed demonstrates that it was intended to "[create] a***

*species of tort liability" in favor of persons who are deprived of "rights, privileges, or immunities secured" to them by the Constitution."* [citations omitted]. Title 42 U.S.C. § 1983 et seq. is actionable under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**NOTICE:** On June 19, 2015 CWI was sent this Federal suit in advance for review so that they fully understood the ramifications of the case and Plaintiff demands in attached letter and as stated in this suit. Deadline was given at the earliest time after the 4th of July Holiday. On July 2, 2015 Plaintiff further sent CWI an email stating that the suit would be filled on the morning of the 8th of July and that CWI had until the close of business hours on the 7th of July to fully comply with Plaintiffs demands. As usually no word was heard from CWI and therefore this suit has been file to protect Plaintiff rights under the Due Process Clause of the 14th Amendment of the United States Constitution. **Plaintiff fully understood that CWI would do nothing and deliberately hide from their responsibilities and why Plaintiff chose to file as a § 1983 where punitive damages could be extracted from CWI to make the point that their behavior will not be tolerated.**

**MATTER OF LAW**

**Matter of Law I:** Title 42 U.S.C. § 1983 et seq. is part of the Civil Rights Act of 1871. This provision was formerly enacted as part of the Ku Klux Klan Act of 1871 and was originally designed to combat post-Civil War racial violence in the Southern states. Reenacted as part of the Civil Rights Act, section 1983 is as of the early 2000's the primary means of enforcing all constitutional rights. Title 42 U.S.C. § 1983 et seq. - Civil action for deprivation of rights states:

*"Every person who, **under color of any statute**, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."*

The Supreme Court has broadly construed the provision *"under color of any statute"* to include virtually any State action including the exercise of power of one *"possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," (United States v. Classic*, 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)).

The US Supreme Court decisions in *(Monroe v. Pape,* 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)), and *(Monell v. Department of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)),* implemented Congress's original intent in enacting section 1983. The Court began accepting an expansive definition of rights, privileges, or immunities and held that the act does cover the actions of **state and municipal officials,** even if they had no authority under state statute to act as they did in violating someone's Federal rights. In Monell *Id.* the United States Supreme Court overruled the Courts former ruling in Monroe *Id.* holding that a local government is a *"person"* subject to suit under Title 42 U.S.C. § 1983: civil action for deprivation of rights. CWI is a College State Trust formed under the laws of Idaho and is a *"Governmental Entity"* as defined in 6-902(3) of the Idaho Tort Claims Act and a *"political subdivision"* of the State that stands alone as defined by the Department of Administration Risk Management Program for the State of Idaho *(See Matter of Law VIII).*

The violation of the Plaintiffs right as a Veteran to receive VRAP benefits *(See Matter of Law II)* due to the Gross Negligence actions of CWI employees is a breach of Fiduciary Duty *(See Matter of Law IV).* Such violation is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and is therefore actionable under Title 42 U.S.C. § 1983 et seq.

**Matter of Law II:** Congress passed, and the President has signed into law, the VOW to Hire Heroes Act of 2011. Included in this new law is the Veterans Retraining Assistance Program (VRAP). VRAP offers up to 12 months of training assistance to unemployed Veterans. The requirements for the VRAP program from the VA are: (1) ages 35 to 60 (2) not employed at time of applying (3) must attend full-time in an approved program (4) funding for the program ending with last financial dispersement on

April 1, 2014 (5) assistance equal to the monthly full-time payment rate under the Montgomery GI Bill–Active Duty program (**Exhibit A**).

**Matter of Law III:** The Idaho Supreme Court, in the case of (*Podolan v. Idaho Legal Aid Services Inc.,* 123 Idaho 937, 854 P.2d 280 (Ct.App.1993)), held that the breach of Fiduciary Duty is a Tort. The court found a fiduciary relationship exists between two parties *"when one is under a duty to act or give advice for the benefit of another upon a matter within the scope of the relation."* (123 Idaho at 946, 854 P.2d at 289). The US Supreme Court has held that section 1983 creates *"a species of tort liability"* (*Imbler v. Pachtman,* 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 [1976]) quoted in Carey *Id.* Thus, the Supreme Court has held that, as in Tort Law, a section 1983 plaintiff is entitled to receive actual damages (*Carey v. Piphus,* 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 [1978]). A section 1983 plaintiff is also required to prove that a Federal right was violated and, similar to tort law, that the alleged violation was a proximate or legal cause of the damages that the Plaintiff suffered (*Arnold v. IBM Corp.,* 637 F.2d 1350 [9th Cir. 1981]). The VRAP program is a Federal Law *(See Matter of Law II)* and CWI violated this law when it breached its Fiduciary Duty a Tort in Idaho (Podolan *Id.*) which violated Plaintiffs right to the VRAP funding he earned in the service of his country, that is protected by the Due Process Clause of the 14th Amendment to the United States Constitution and is therefore actionable under Title 42 U.S.C. § 1983 et seq.

**Matter of Law IV:** **Fiduciary Duty and Breach of Duty Defined:**

(1) Establishing a claim for breach of fiduciary duty first requires a finding that a Fiduciary relationship exists. (*Beaudoin v. Davidson Trust Co.,* 151 Idaho 701, 705, 263 P.3d 755, 759 (2011)).

(a) **Plaintiff was accepted as an in-state in-district student at CWI in the Small Engine Degree Program. A Definitive Fiduciary relationship existed.**

**(2)** The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party. *(Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 278, 824 P.2d 841, 853 (1991)).

**(a) Plaintiff put his full trust in CWI and its employees called *"Specialist"* because this was the ONLY avenue in which Plaintiff could proceed as a new student, there were no other avenues available. Plaintiff had no other choice other than to believe in the trust worthiness of the *Specialist* as they were his only choice and are the lead representatives for CWI for new students.**

**(3)** *"In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." (Bushi v. Sage Health Care, PLLC*, 146 Idaho 764, 203 P.3d 694, 699 (2009)); see also *(Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007)) (applying Nevada law).

**(a) CWI is an institution of higher education defined by Idaho statute as a *"Governmental Entity"* and a *"political subdivision"* as defined by the Department of Administration Risk Management Program for the State of Idaho. Like all educational institutions in Idaho CWI had a Fiduciary Duty to Plaintiff to ensure its employees were properly trained in their jobs and those jobs were executed to the fullest extent of the resources available to such employees. CWI failed this duty not once but repeatedly and once upper management was made aware of it they simply ignored it.**

**(4)** *"[a] fiduciary relationship does not depend upon some technical relation created by or defined in law, [and] exists in cases where there has been a special confidence imposed in another*

*who . . . is bound to act in good faith and with due regard to the interest in one reposing the confidence." (Jones v. Runft, Leroy, Coffin & Matthews, Chtd.,* 125 Idaho 607, 873 P.2d 861, 868 (Idaho 1994)).

**(a) Plaintiff put his full faith in the hands of the *Specialist* from the first day he walked into CWI until the last day because that was the only avenue available to Plaintiff in the system where new students had to go through the *Specialist*. It was the Gross Negligence by the *Specialist* who were trained pursuant to the parameters of CWI that was the cause of the loss of Plaintiffs VRAP benefits. Law does not define a *Specialist*, a *Specialist* is defined by CWI and the duties a Specialist is responsible for.**

**""One Stop Student Service Center" that is staffed by "Specialist". According to the 2013-14 CWI Catalog (Exhibit E):** *"At College of Western Idaho (CWI) we have created One Stop Student Services Centers with the goal of providing all of the services that you need from one single location. Our task is to inspire you to envision your potential, help you identify your pathway, and mentor your journey! Your success is our only product."* **A *Specialist* is the representative for CWI at the One Stop Student Service Center who handles all the needs of a potential student and guides them through the process from the time they walk through the front door until graduation. According to Oxford Dictionary (© 2014 Oxford University Press) (Exhibit F),** *"A Specialist is a person who concentrates primarily on a particular subject or activity; a person highly skilled in a specific and restricted field"* **and from Merriam-Webster Dictionary,** *"a person who has special knowledge and skill relating to a particular job, area of study"* **(Merriam-Webster © 2014 Merriam-Webster, Incorporated)."**

**(5)** Supreme Court of Idaho: High Valley Concrete, LLC v. Sargent, 149 Idaho 423, 234 P.3d 747, 752 (Idaho 2010) stated:

*"To establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." Tolley v. THI Co., 140 Idaho 253, 261, 92 P.3d 503, 511 (2004). "Fiduciary relationships are commonly characterized by* **one party placing property or authority in the hands of another,** *or being authorized to* **act on behalf of the other.** *" Country Cove Dev., Inc. v. May, 143 Idaho 595, 603, 150 P.3d 288, 296 (2006). This Court explored in greater detail the bases of fiduciary relationships in Idaho First National Bank v. Bliss Valley Foods, Inc.:*

*The term fiduciary implies that* **one party is in a superior position to the other and that such a position enables him to exercise influence over one who reposes special trust and confidence in him** *. As a general rule, mere respect for another's judgment or trust in this character is usually not sufficient to establish such a relationship. The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party.*

*121 Idaho 266, 278, 824 P.2d 841, 853 (1991) (emphasis in original) (quoting Burwell v. S.C. Nat'l Bank, 340 S.E.2d 786, 790 (S.C.1986)).*

*Such a relationship does not exist when parties are dealing with one another at "arm's length": "Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction." Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 136 Idaho 922, 928, 42 P.3d 715, 721 (Ct.App.2002)... ... ... ... ...*

*As this Court stated in Bliss Valley, "[t]he facts and circumstances must indicate that the one reposing trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interest of the other party." 121 Idaho at 278, 824 P.2d at 853 (emphasis omitted).*

*Although this Court did state in Country Cove that "[f]iduciary relationships are commonly characterized by one party placing property or authority in the hands of another," 143 Idaho at 603, 150 P.3d at 296, these situations commonly arise when parties are dealing on unequal terms, as we pointed to in Bliss Valley... ... ... ... ... ... ... ....*

*For the court to find a fiduciary relationship, "[t]he facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the [alleged fiduciary] is acting not in his own behalf, but in the interest of the other party." High Valley Concrete, LLC v. Sargent, 149 Idaho 423, 234 P.3d 747, 752 (Idaho 2010). "for a fiduciary duty to exist, there must be a relationship in which one party is in a superior position to the other and that such a position enables him to exercise influence over one who reposes special trust and confidence in him." And "To recover on a claim for breach of a fiduciary duty, Plaintiffs bear the burden of proving that the defendant breached a fiduciary duty and that such a breach resulted in damage." High Valley Concrete, LLC v. Sargent Id.*

**(a) Plaintiff placed his *"property"* right of the VRAP benefits in the hands of CWI's *"superior position"* giving them *"authority"* to act in his best interest which created a *"special trust and confidence"* in the CWI *"Specialist"* who behaved with gross negligence causing the loss of the benefits in breach of Fiduciary Duty.**

**(6)** (*Stearns v. Williams*, 72 Idaho 276, 288, 240 P.2d 833, 840-41 (1952)) states: *"recognizing a fiduciary as one in a position to take 'unfair advantage' of another but who 'can take no advantage to himself' because he 'is bound to act for the benefit of another.'"*

**(a) CWI *Specialist* took 'unfair advantage' of Plaintiff when they failed to do the most basic due diligence that their position required. A simple key stroke for them would have ended the problem and they did not care for Plaintiff was an old "Geezer" who would not fit in to the high tech atmosphere of CWI nor the space age entrance appearance of the *Specialist* work stations. Plaintiff is sure they had a good laugh after he left the building.**

**(7)** *(Gray v. Tri-Way Constr. Serv. Inc.*, 147 Idaho 378, 386, 210 P.3d 63, 71 (2009))* states, *"members of the same family, partners, attorney and **client**, business partnerships, director-corporation, **officer-corporation and husband-wife"** as examples of a fiduciary in the State of Idaho.

**(a) Plaintiff was the client of CWI as a student who put his full trust into the hands of the President of CWI (*officer* of CWI) to ensure the *Specialist* and all other employees did their job correctly. They all breach their Fiduciary Duty to Plaintiff.**

**(8)** *(City of Meridian v. Petra Inc.*, 154 Idaho 425, 441, 299 P.3d 232, 248 (2013))* states a Fiduciary is one, *"under a duty to act or give advice for the benefit of the other upon a matter within the scope of the relationship"*

**(a) The *Specialist* at CWI where, *"under a duty to act or give advice for the benefit of the other upon a matter within the scope of the relationship"* and the *Specialist* and all other employees behaved with Gross Negligence which cause the loss of Plaintiffs VRAP benefits.**

**(9)** The *US 9th Circuit Court of Appeals* has given their interpretation of Fiduciary Duty as, *"a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." (U.S. v. Milovanovic,* ___ F.3d ___ (9th Cir. April 24 2012)).

**(a) The definition given by CWI's own catalogue defining the *One Stop Student Services Centers* and the *Specialist* who staff them is, *"a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." (See Point 4 of Matter of Law IV).***

**(10)** *(Stuard v. Jorgeson*, 150 Idaho 701, 704-05, 249 P.3d 1156, 115960 (2011))* the Court stated, *"in negligence actions, a plaintiff does not have actual damages until the plaintiff has suffered some 'objectively ascertainable' loss."*

**(a) Plaintiff has proof of the loss of $12701.47 of his VRAP benefits.**

**(11)** *(Taylor v. McNhichols*, 149 Idaho 826 (2010)) states, *"there must be objective proof of damages, and this proof is not available until there is some finality or conclusion to the matter underlying a claim for negligence,"*

**(a) Plaintiff has proof of the loss of $12701.47 of his VRAP benefits.**

**Matter of Law V:** The US Supreme Court has held that Punitive Damages are available under Title 42 U.S.C. § 1983 et seq., *(Smith v. Wade,* 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). A plaintiff is entitled to punitive damages if the jury finds that the defendant's conduct was reckless or callously indifferent to the federally protected rights of others or if the defendant was motivated by an evil intent. Juries have the duty to assess the amount of punitive damages to punish the Defendant. Such damages may be awarded even if the plaintiff cannot show actual damages, *(Basista v. Weir,* 340 F.2d 74 (3d Cir. 1965)).

*"To prevail on a claim for intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe."* *(Mortensen v. Stewart Title Guar. Co.,* 149 Idaho 437, 235 P.3d 387, 396 (Idaho 2010)) (internal citations omitted). *"To be actionable, the conduct must be so extreme as to 'arouse an average member of the community to resentment against the defendant.'"* Id. at 446-47.

**Matter of Law VI:** The Civil Rights Attorney's Fee Awards Act of 1976 (42 U.S.C.A. § 1988[b]) allows for the award of reasonable attorneys' fees to the prevailing party in cases brought under various federal civil rights laws, including section 1983. This provision applies whether or not Compensatory Damages were awarded. This provision also applies whether the plaintiff or the defendant prevails. However, if the defendant is the prevailing party, attorneys' fees have been held to be appropriate only where the lawsuit was "vexatious, frivolous, or brought to harass or embarrass the defendant" *(Hensley v. Eckerhart,* 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 [1983]). In addition, section 1988 does not

require that the attorneys' fees awarded be in proportion to the amount of damages recovered (*City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 [1986]).

**Matter of Law VII:** Federal Rules of Civil Procedure Rule 38. Right to a Jury Trial; Demand:

*(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate.*

*(b) Demand. On any issue triable of right by a jury, a party may demand a jury trial by:*

*(1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and*

*(2) filing the demand in accordance with Rule 5(d).*

**Plaintiff Demands Jury Trial.**

**Matter of Law VIII:**    The Eleventh Amendment shields a state and certain subdivisions, boards, or agencies are considered "arm[s] of the State" from suit in Federal court unless the state consents to suit or waives its immunity. In (*Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977)) the Supreme Court looked, in part, to the nature of the entity created by state law and held that a local school district was not an *"arm of the State"* where Ohio Law characterized the local school district as a ***political subdivision.*** Letter dated September 5, 2013 **(Exhibit Z)** from Glen Goff of the Department of Administration Risk Management Program for the State of Idaho regarding this case states, the ***" State of Idaho is not an involved agency in this matter"*** and that CWI is a ***"political subdivision"*** of the State that stands alone. Furthermore CWI is a College State Trust formed under the laws of Idaho and is a *"Governmental Entity"* as defined in 6-902(3) of the Idaho Tort Claims Act. CWI has both classrooms and administrative offices in Ada County. CWI's service area includes Ada County, Adams County, Boise County, Gem County, Payette County, Valley County Washington County, and portions of Elmore and Owyhee counties. CWI adheres to Idaho Code Title 33 Education, Chapter 21 Junior (Community) Colleges. Policies of the Idaho State Board of Education that apply to the College of Western Idaho are limited as specified by Board Policy Section III, Subsection A.

**THE FACTS & CASE**

**Fact & Case (1):** The Plaintiff was honorable separated in 1975 after 4 years (1971-75) of service during the Vietnam War period as a US Navy Diver, Special Weapons Expert, Torpedoman, SS Diesel Submarine Qualified in covert operations while attached to a Diesel Submarine throughout the Asian Pacific Region.

**Fact & Case (2):** Congress passed, and the President has signed into law, the VOW to Hire Heroes Act of 2011. Included in this new law is the Veterans Retraining Assistance Program (VRAP) *(See Matter of law II)*.

**Fact & Case (3):** Plaintiff applied on line for the VRAP funding from the Veterans Administration and was accepted on June 19th 2013 **(Exhibit B)** for the Power-Sports and Small Engine Repair Technology Degree at CWI **(Exhibit C).** Plaintiff was notified on June 25, 2013 that his Direct Deposit for the funding had been set up and was ready to go **(Exhibit D).** The VRAP program *(See Matter of law II)* has specific time limits and type of degree programs for the funding. According to the VRAP program  the Plaintiff needed to begin using the funding award before the upper age limit of 60 was reached ***and*** before the limit of qualified participants was reach ***and*** before the funding for the program ran out on April 1, 2014 **(Exhibit A).**  The simple fact was that if the Plaintiff was not enrolled and taking the minimum of 12 credit hours at CWI in the Fall Semester which began August 26, 2013 his funding award for the VRAP program would be gone with no chance to get it back under the degree program already approved by the VA. There was no time to change to another program because it require the Plaintiff to return to square one and start all over again with a new application to the VA for VRAP funding and thus canceling the existing already approved program ( *See* **Exhibits A, B & C ).**

**Fact & Case (4):** Plaintiff approved VRAP program was set as a 2 year Associate of Science Degree in Power-Sports and Small Engine Repair Technology. With his previous BS Degree in Earth Science from Iowa State University Plaintiff could technically use the class credits from it to fulfill the education requirements of the Power-Sports and Small Engine Repair Technology leaving only the core

laboratory mechanical classes to complete. PSER 101 Small Engine Laboratory PSER and 141 Small Engine Theory were those 2 classes for the Fall Semester. As The Facts of this case will show those 2 classes were filled and closed out as soon as registration opened in mid-April 2013 with 2 additional students allowed in over the 16 limit and a waiting list of 11 over that as **Will Fanning** the Dean of the program told the Plaintiff in their meeting on the July 30, 2013. The 2 classes needed had been closed since mid-April and none of the *Specialist* that CWI expects new students to put their full faith and future career in the hands of did not have any idea nor did they check when the Plaintiff requested a complete evaluation to ensure no problems would occur.

The CWI is proud of its technological *One Stop Student Service Center* that is staffed by *Specialist.* According to the 2013-14 CWI Catalog **(Exhibit E),** *"At College of Western Idaho (CWI) we have created One Stop Student Services Centers with the goal of providing all of the services that you need from one single location. Our task is to inspire you to envision your potential, help you identify your pathway, and mentor your journey! Your success is our only product."* A *Specialist* is the representative for CWI at the *One Stop Student Service Center* who handles all the needs of a potential student and guides them through the process from the time they walk through the front door until graduation. According to Oxford Dictionary (© 2014 Oxford University Press) **(Exhibit F),** *"A Specialist is a person who concentrates primarily on a particular subject or activity; a person highly skilled in a specific and restricted field"* and from Merriam-Webster Dictionary, *"a person who has special knowledge and skill relating to a particular job, area of study"* (Merriam-Webster © 2014 Merriam-Webster, Incorporated). A simple key stroke by a *Specialist* would have alert the Plaintiff to the problem on June 3rd when he first arrived at the main administration campus and the first contact with a *Specialist*. Had the *Specialist* performed the most basic checks the Plaintiff would have been notified on the spot that the program core classes had been closed since mid-April and Plaintiff could have quickly changed to a similar program by canceling the first VA request and resubmitting another with

plenty of time to spare.

It is irrefutable that the ***One Stop Student Services Centers*** and the ***Specialist*** who run those stations are in complete control of all new students arriving at CWI and that control defines CWI as the Plaintiffs Fiduciary under Idaho Law *(See Matter of Law IV)*. From the moment the new prospective student walks through the doors at CWI they must first pass through a ***Specialist*** after first signing in at a computer terminal for a reservation with one of them. A new student must put their full faith and guidance into the hands of the ***Specialist*** to not only begin the process of becoming a student but also in the arrangement for and guidance in at least the classes need to the first semester period until the new student becomes acclimated to the system. The behavior by the ***Specialist*** in this case can only be described as Gross Negligence as defined under 6-902 (4) of the Tort Claims Act and a Breach of Fiduciary Duty *(See Matter of Law IV)*. The employees of the Defendant acted with Gross Negligence which resulted in the Plaintiffs loss of VRAP funding from the VA.

**Fact & Case (5):** On Monday morning June 3, 2013 Plaintiff was at the main Nampa Idaho CWI campus 16 days prior to the actual approval of the VRAP funding to begin the process with the college and work out any problems that may occur.  Time was critical because of Plaintiffs age being at the upper level of the funding scale and the time limits of the funding itself. The first meeting was with **Connor McComas** the CWI ***Specialist* (Exhibit G - business cards)** for the ***One Stop Student Service Center. Specialist* McComas** reviewed Plaintiffs program for the Power-Sport and Small Engine Degree Program in detail and printed off the requirements never stating anything regarding the closure of the classes or the potential for it. The only issue that Conner came up with after Plaintiff requested a review for any problems was that if Plaintiff was not reclassified as in state and in district resident for tuition the entire cost of the program would probably be more than the funding from the VRAP program. ***Specialist* McComas** had determined through a few direct questions that the Plaintiff would be classified as an out of state resident for tuition purposes. The CWI ***Specialist*** who was at the time

training another individual could have checked to see if there were any glitches or other impediments for Plaintiff in this program with a mere key stroke on the computer and it was assumed he had especially if he was teaching another person the job and was supposed to be a *Specialist*. The *Specialist* knew full well that there were time restrictions both in funding of the VRAP program and age restrictions for Plaintiff in the program which were discussed between Plaintiff and *Specialist* **McComas.** *Specialist* **McComas** went so far as to pull up the requirements for the VRAP Program to familiarize himself with it and knew full well as Plaintiff had repeatedly stated to him that Plaintiff had only one shot at this funding and if anything went wrong there would be no more chances. Plaintiff left the Nampa CWI Campus that morning with only one mission and that was to quickly pursue a course to get instate residence.

**Fact & Case (6):** Plaintiff pursued the resident status issue personally with **Phil Wickliff (Exhibit H)** the **Veterans Education Coordinator** in Boise and **Dana Kelly (Exhibit I)** at the **Idaho Board of Education** in Boise in 2 meetings each in person and additional emails and they said that their contacts with CWI would have Plaintiff changed to instate residence status because the Idaho Statutes are subject to interpretation by the colleges and universities as stated in the statutes.

**Fact & Case (7):** Plaintiff contacted **Shea Hanson** a CWI *Outreach Advisor* expressing his concern regarding no notification of the status of residence change **Dana Kelly** of the Idaho Board of Education said would happen. CWI *Outreach Advisors* are the contacts/middlemen between students or prospective students that iron out any problems to ensure there is a smooth glitch free transition for students once the student/prospective student has already gone through the *Specialist* in person at CWI. *Specialist* deal with students directly and personally when at the CWI facility and *Outreach Advisors* deal with students after they have left the facility. On July 3, 2013 **Shea Hanson** sent Plaintiff an email **(Exhibit J)** stating that Plaintiff had been designated as out of state resident and she would contact **Mike Anderson** at Student Accounts that handles residence issues regarding Plaintiffs situation. On

July 6, 2013 Plaintiff sent **Shea Hanson** a short email **(Exhibit K)** asking her to forward the residence documents sent her to **Mike Anderson. Shea Hanson** replied back on July 8, 2013 by email **(Exhibit L)** to say she would and to let her know if there was anything else. **Shea Hanson** via email **(Exhibit M)** on July 9, 2013 notified Plaintiff that instate and in district classification had been approved by **Mike Anderson** at CWI and the reclassification change would be made as soon as class registration occurred. In a follow up email the same day July 9, 2013 **Shea Hanson** mentioned that there was a meeting required for the Power-Sports and Small Engine Repair Technology program on May 15, 2013 which was 2 weeks before Plaintiff even arrived back in Idaho **(Exhibit N). Shea Hanson** suggested contacting the Instructor/Director **Kirk Wartman** in regards to this. Email **(Exhibit O)** was sent to **Kirk Wartman** on the July 9, 2013 the same day.  No response from **Kirk Wartman** was ever received. In a July 9, 2013 email **(Exhibit P)** to **Shea Hanson,** Plaintiff expressed his concern regarding not knowing the full process to get this all done and that things had obviously changed in the higher education system since his BS Degree decades before. **Shea Hanson** should have known something was wrong when a mandatory meeting for the classes in the program was set for May 15, 2013 when the actual classes were not to start until August 26, 2015. This was a major RED FLAG for both the *Specialist* and the *Outreach Advisors* who the Plaintiff had entrusted everything to.

**Fact & Case (8):** On July 10, 2013 after hearing of the intended residence status reclassification from *Outreach  Advisor,* Shea Hanson Plaintiff returned to CWI in Nampa and had **Sam Stone (Exhibit G - business cards)** another *Specialist* at the *One Stop Student Service Center* go over everything needed done  to ensure that all would work smoothly. The Plaintiff paid the $25 application fee and was told by Sam to have Plaintiffs previous college transcripts sent to CWI and the only thing left would be to register for his classes. Sam knew the program degree Plaintiff was seeking was Power-Sports and Small Engine Repair Technology; **and** that it was to start in the Fall of 2013; **and** that the VRAP Veterans Program was funding this;  **and** that this was a one shot chance Plaintiff had; **and** that

Plaintiff had a Bachelor of Science Degree from another university whose transfer credits could cover the college electives in the program if needed; **and** that the Plaintiff only needed the core classes which were all hands on lab sessions. **Sam Stone** was a *Specialist* at CWI just like *Specialist* **Connor McComas** was on the 3rd of June who had Plaintiffs future at CWI and his VA funding at their fingertips via the computer key board and neither one ever bothered to check and see if there were any problems in the program. **Sam Stone** photo copied Plaintiffs entire eligibility funding letter from the VA for the record. Plaintiff repeatedly asked him if there was anything else that was needed or needed to know or needed to be done and the *Specialist* said there was nothing else except the transcripts and registration for the classes as soon as the transcripts had arrived. The Plaintiff faxed his transcript request that afternoon on returning to Boise and assumed all was in order **(Exhibit Q).**

**Fact & Case (9):** On July 22, 2013 Plaintiff visited CWI in Nampa for the third time to ensure all was going smooth with his entrance into the Power-Sports and Small Engine Repair Technology program and to register for the 2 core classes needed for the Fall Semester, PSER 101 Small Engine Laboratory PSER and 141 Small Engine Theory. Plaintiff was given his formal acceptance letter on file at that time dated July 22, 2013 **(Exhibit V).** *Specialist* **Saundra Bell** said that Plaintiff had been admitted to the college now that Plaintiffs transcripts had arrived and the last thing to do was to register for the classes. After only a few key strokes that took a matter of seconds Saundra said that the classes were full and permission from the instructor or someone of authority in Administration to remove the block was needed. In Plaintiffs extensive efforts in pursuit of this degree program which began on May 31, 2013 he was never told by any *Specialist* in the first two visits to the college on the 3rd of June and on July 10th nor by the instructor **Kirt Wartman** on July 9, 2013 when the Plaintiff emailed him nor by any of the several other representatives the Plaintiff was in email contact with during the period between June 3rd and July 22, 2013 that the classes were full and had been since April and not only full but over filled with by 2 persons with an additional waiting list of 11 people. Not one word by any of them and

these are supposed to be the people in charge and have access to such information. These were the *Specialist* that every new student is required to put their trust in.

**Fact & Case (10):** Plaintiff immediately went upstairs to the CWI Administration Office after speaking to *Specialist* Saundra Bell and spoke to **Pat Neil,** *Assistant Dean of Professional Technical Education* **(Exhibit G - business cards).** Pats response was that he would try and contact the instructor on this issue and that the classes were filled by the middle of April but two others had been let into the class above the 16 class limit and that these type of classes fill up fast. The Plaintiff left a completed and signed ADD slip so the classes would be added automatically if approval was given from the instructor who appeared to be AWOL for the summer and was not answering his emails. In the meeting with **Pat Neil** Plaintiff told him 3 times that the funding from the VA was a one shot deal and if I did not get the degree program classes Plaintiff was approved for then the funding would be gone with no second chances due to the age cut off and funding time limits of the VRAP Program. Before leaving **Pat Neil's** office Plaintiff gave him his email address and asked to be inform of the Assistant Deans efforts as soon as possible. After several days of no word from anyone at CWI Plaintiff sent an email letter on July 25, 2013 to the CWI Administration **(Exhibit R)** regarding the time sensitive situation and a written account of what had happened since June 3, 2013.

**Fact & Case (11):** On July 27, 2013 Plaintiff sent **Will Fanning** the *Dean of Professional Technical Education* **(Exhibit G - business cards)** of CWI an email **(Exhibit S)** which the Power-Sports and Small Engine Repair Technology program is under and Fanning contacted Plaintiff on the July 29, 2013 **(Exhibit S also)** and arranged a meeting at CWI the following morning. The meeting with **Will Fanning** the next day was as short as it was insulting. The child psychology techniques **Will Fanning** used to handle Plaintiff and to cover up for the total failure of all employees at CWI was obviously something Fanning learned in a Psychology College 101 class. Plaintiff presented the strait Facts to **Will Fanning** after the Deans childish antics that if Plaintiff was not allowed to take the 2 core courses

for the degree program then the program and the funding from the VA would be gone with no hope of a

second chance. The Dean had no interest in accommodating this request so Plaintiff left. The only new

information that came from the meeting was that there was an actual waiting list with as many as 11

people on it. What exactly the reason for a waiting list for a program/classes that were closed in April

with 2 extra allowed in over the limit of 16 already is unknown and why this entire issue was not RED

FLAGED by some one or the computer is blatant breach of Fiduciary Duty by CWI.

**Fact & Case (12):** Plaintiff knew that the funding for the VRAP program may well end in April 2014

(Congress had not decided yet) and the last month funded in distribution would be April so his backup

plan was to simply get the Certificate in the same program which would be a one year program which

he could complete entirely by taking 2 semesters of the core engine lab classes and using his Iowa State

University credits to cover any of the other classes. It all fit perfectly except there were no core classes

and he would be out the door. Out of desperation to not lose his funding Plaintiff returned to the Nampa

CWI campus on the morning of Monday August 12, 2013 and registered for 4 classes other than the

core engine classes which were closed. To Plaintiffs recollection he had not taken any of these specific

classes in his previous degree 30 years before. Plaintiff made sure that the 4 classes of a total of 13

credit hours were all in line with the ones listed and require in Power-Sports and Small Engine Repair

Technology and even had **Shannon Heard** an *Advisor, Student Enrichment Enrollment & Student*

*Services* **(Exhibit G - business cards)** assist Plaintiff in every step in the selection of the classes

**(Exhibit W).** Shannon knew Plaintiff had his Iowa State University Degree transferred in and reviewed

Plaintiffs transcripts in the selection process and  saw no problem in taking the classes Plaintiff had just

finished registering in for the Fall semester and use them to cover all his non-core class requirements

for Power-Sports and Small Engine Repair Technology. Plaintiff then could take the core classes

beginning the next semester when they were open and still retain his funding.

According to **Shannon Heard** Plaintiff had completed the process and all was need was for the VA

representative at CWI to certify Plaintiffs status as a registered student in the program. While Plaintiff waited at CWI that morning to ensure nothing would go wrong **Shannon Heard** contacted **Jenny Johnson** the ***Registrar Advisor Evaluation, VA & International Enrollment & Student Services*** to have Plaintiff certified and the papers put in the mail to the VA that day. **Shannon Heard** assured Plaintiff that all was done and only the paying of the tuition and fees were left. Plaintiff's status of out of state to instate and in district residence had been changed after registering for the classes. On August 13, 2013 Plaintiff received an email **(Exhibit T)** from **Crystal Van Komen** the ***Manager, Registrar Degree Services, Veterans Coordinator*** at CWI. It was the final proverbial knife in the back for Plaintiff and the last nail in the coffin for Plaintiffs VRAP funding. Over 2 months of constant effort and expense and multiple travels to Nampa from Boise all for nothing.

**Fact & Case (13):** The real truth behind all these Facts is that Plaintiff was just turning 60 and even though he was an honorable Veteran from the Vietnam period with a spotless civilian record few could even dream of and he had a BS degree already with several commercial degrees and in excellent physical shape and health according the Veterans Administration he was still an **"old man"** when compared to the teenagers walking around him at CWI. Old enough to be the grandfather of many at CWI and the looks from everyone including the staff and ***Specialist*** is pervasive regardless of how they try to hide it. It was, what is this **"old man"** doing here applying for entrance? CWI did not want Plaintiff at their college is the real reason that the events tell in the time line of this story. Yes, they did grant instate residence but only because the Idaho Board of Education who has jurisdiction over CWI suggested that would be a good idea. Regardless of what the Plaintiff did he was cut off. Even at the very end **Crystal Van Komen** the ***Manager, Registrar Degree Services, Veterans Coordinator*** at CWI refused to qualify Plaintiff for the VA benefits for classes that are **REQUIRED** for the degree because some of the classes could possibly be considered transferable from Plaintiffs former BS degree. **Crystal Van Komen DID NOT** have the authority do deny the Plaintiff VA benefits when the classes

in which he was signed up for were in the program and already verified by another person as such and even suggested by them as classes to take nor were these exact classes in Plaintiff transcripts.  The constant road blocks thrown up in front of Plaintiff were deliberate age discrimination by CWI. The college known for the youthful crowd did not want an **old man** on campus as a student nor sitting in a class room with students young enough to be his grandchildren. This was blatant age discrimination from the bottom to the top and it resulted in a Breach of Fiduciary Duty by CWI.

The email from **Crystal Van Komen (Exhibit T)** drips with, we don't want you. I never took a biology class at any college or university in my life and the 2 history classes registered for were not on any list of my previous classes that I know of. All 3 of these classes registered for under the supervision of **Shannon Heard**  and even suggested by her where part of Plaintiff's VRAP degree program. The VA approved the VRAP program not **Crystal Van Komen** and the classes registered for were on that program which Plaintiff had not taken before which did not matter even if they were. The real issue was CWI did not want an **old man** on campus and they did everything possible to ensure that and at the very end regardless of how hard Plaintiff tried, they got rid of him. Neither **Crystal Van Komen** nor any of the other employees involved in this discrimination abuse ever put their life on the line for their country but this **"old man"** did and now he is discriminated for it and for not dying in the field like all the others and he lives on and for that he is black listed by CWI because the gray hair is showing.

**Fact & Case (14):** The acts of the *Specialist* and other employees to the level of  Dean  employed  by the Defendant behaved with  Gross Negligence, *As defined in  6-904C of the Tort Claims Act-"Gross negligence" is the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others. "* This case is NOT filed under the Idaho Tort Claims Act and instead is filed under 42 U.S.C. § 1983 because the Idaho Tort Act cannot cover the magnitude of the

deprivation of Plaintiffs Due Process rights nor is there sufficient remedies under the Act. Only a §

1983 action can adequately deal with this type of violation.  The US Supreme Court in (*Carey v.*

*Piphus,* 435 U.S. 247 (1978)) stated, *"The legislative history of § 1983, elsewhere detailed*

*demonstrates that it was intended to "[create] a species of tort liability" in favor of persons who are*

*deprived of "rights, privileges, or immunities secured" to them by the Constitution."* [citations

omitted] *See also* (*Imbler v. Pachtman,* 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 [1976]) has

define cases filed under a § 1983 as a Tort.

**Fact & Case (15):** The employees of CWI failed to perform their duties which a *"reasonable person in*

*a similar situation and of similar responsibility would, with a minimum of contemplation, be*

*inescapably drawn to recognize his or her duty to do and that failing that duty shows deliberate*

*indifference to the harmful consequences to others."*

**Fact & Case (16):** The Facts show that even when Plaintiff repeatedly questioned the employees

regarding any possible problems and remaining impediments the employees who are supposed to be

*Specialist* acted with deliberate indifference to the harmful consequences to Plaintiff. Even after the

Gross Negligence of the *Specialist* employees was brought to the attention of the Administration Office

of CWI and then the Dean of the College they acted with deliberate indifference and cover ups. **Bert**

**Glandon,** President of CWI and 3 of its Trustees were notified of the events thus far that had transpired

to which there was no response from any of them **(Exhibit U).** The Gross Negligence exhibited by the

employees of CWI from the *Specialist* to the Dean to the President of the college itself was a systemic

collapse of their system due to inadequate training, arrogance and discrimination at all levels and an

instilled behavior of we can do no wrong and if we do there are no consequences for our actions.

## SUMMARY ANALYSIS

The failure of the *Specialist* to check if the core classes were filled in a degree program where there is a

maximum of only 16 students in such classes or if there was some type of restrictions at that time or if

the class or program was still even in effect was unconscionable. Plaintiff put his trust in the *Specialist* representing CWI to do the basic due diligence as he expected every representative he met in person at CWI and communicated with on line and they failed miserably. Had Plaintiff known from the beginning that there was a problem with the Power-Sports and Small Engine Repair Technology program he would still have had the chance to make the switch to another program that would have been beneficial to him by canceling his first VRAP application just days after submitting it and sending another one on line. The VRAP application was submitted on line Friday May 31st 2013 and Plaintiffs first CWI meeting with the first *Specialist* at the Nampa Campus was Monday June 3rd 2013. The Veterans Administration website clearly states Plaintiff would have to resubmit an entire new application to them on line to change programs.

**EVERYONE** at CWI from Plaintiffs first contact with *Specialist* **Conner McComas** on the 3rd of June until the final knife in the back from **Crystal Van Komen** on August 13th performed in the range from *"Gross Negligence"* to the total lack of *"Ordinary Care"*. The only possible exception was **Mike Anderson** who was in charge of evaluating Plaintiffs residence status. How can so many people who are given the titles of **SPECIALISTS, ADVISORS, DEANS** and **PRESIDENT** be so out of touch with their own programs and systems unless it was deliberate? Plaintiffs recent visit to the campus office of the VA on the BSU campus he talked to one of the representatives there who had attended classes at CWI before transferring to BSU and he said the same thing Plaintiff had already found out at CWI, **"They want your VA money but they don't want you"**. Veterans are the ones who will challenge the status quo and say no I will not be abused unlike some 18 year old kid fresh out of high school. An old Veteran like Plaintiff is many times tougher than the norm. Plaintiff see's it now as nothing more than a game of tricks played on me from the very beginning. Plaintiff cannot prove deliberate *Malice* pursuant to Idaho Statutes but *"Gross Negligence"* and total lack of *"Ordinary Care"* is over whelming and pervasive. Such arrogant childish displays by **Will Fanning** who is

supposed to be a Dean, who tried to use his college 101 psychology on a man of Plaintiffs age and

experience was utterly disgusting. The president and the trustees of CWI are equally guilty of *"Gross*

*Negligence"* for their failure in putting people in the place of authority like **Will Fanning** and the

*Specialist* who would be better suited to cleaning the toilets at CWI.

Plaintiffs VA funding is gone and will not come back because of his age limitation and the limitations

of the program itself. The VA in its response to Plaintiff request for the full amount he would have

received stated in their 12/30/2013 reply:

## Communication History

Response 351JP via Email 12/30/2013 01:33 PM
Mr. Burdge,

Had you been certified at full time status by the College of Western Idaho for the dates mentioned in
your inquiry, you would have been paid **$1824.67** for the period beginning August 26, 2013 through
October 1, 2013, and **$4449.60** for the period beginning October 1, 2013 through December 21, 2013.
For the spring period, you would have been due **$6427.20** for the term beginning January 21, 2014,
through May 17, 2014.

Thank you for contacting the Department of Veterans Affairs.

jcp/15K<
Muskogee RPO


**$1824.67 + $4449.60 + $6427.20 = $12701.47**

# $12701.47/$136 = 93 prepaid credits hours


**WHEREFORE PLAINTIFF REQUESTS:**

    (1) The Defendant in this case owes the Plaintiff **$12701.47**. Such payment is acceptable in one of

       2 forms:

    (A)  Direct payment of the $12701.47 to the Plaintiff.

(B) Payment of the $12701.47 in the form of credit hours at CWI for In-District Idaho Residents status to the Plaintiff at the current $136 per credit hour rate which means $12701/$136 equals 93 credit hours rounded down to 93. The use of the 93 credit hours for taking classes at CWI would be irrevocable with no time limits. Furthermore the 93 credit hours can at the Plaintiffs discretion be transferred in whole or in part to any individual(s) of his choice at any time by a sign letter of intent by the Plaintiff to CWI.

(C) All court filing fees for filing, printing and service of documents.

(D) Reasonable attorney fees for the entire case beginning from the Plaintiffs first trip to CWI and the first letter written including travel time the same as a Bar Certified Attorney would get until adjudication.

(E) Punitive Damages for $250,000 for the deliberate Gross Negligence and callous disregard for Plaintiffs rights exhibited by CWI.

(F) Printing cost for ALL documents related to the case from the first document to adjudication of the case.

(G) ALL transportation cost to CWI from Boise, Idaho during the case from the first trip until adjudication of the case

(H) Cost of transcript fees for Iowa State University transcripts.

Christopher Burdge, Pro Se Plaintiff _____

Date: July 8, 2015

Christopher Burdge

PO Box 6725

Boise ID 83707

Email: auto457052@hushmail.com